IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JAN 11 2016

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

**MARK T. GRANT,**

        **Plaintiff,**

v.

**THE CITY OF ROANOKE, VA,**

        **Defendant.**

Civil Action No.: 7:16-CV-00007

## COMPLAINT

1) The seizure of $26,257.30 from the sale of the property located at Lot 4A, Block 23, Map of Belmont, Tax Map #4013704, city of Roanoke, more commonly known as 607 Bullitt Avenue SE, Roanoke, Virginia 24013 (Property), between the parties of Mark T. Grant and Lori M. Grant (Sellers) and Delvin A. Brown (Buyer), by the City of Roanoke Virginia (City).

2) The Sellers purchased the Property from the Blue Ridge Housing Development Corporation (BRHDC) on the 20th of May, 2005 and moved into the Property on or about the 15th of May, 2006 upon the separation from Active Duty Service in the United States Army by Mark T. Grant.

3) The Sellers received two separate forms of Direct Assistance for the purchase of the Property.

4) The first form of Direct Assistance to the Sellers was a Community Development Block Grant (CDBG) from the City in the amount of $6400. Grants by definition are a non-secured and non-repayable funds or products disbursed by one party (grant makers), to a recipient. The City has no claim to recover any grant money.

5) The second form of Direct Assistance to the Sellers was a HOME Investment Partnerships Program (HOME) subsidy from the Virginia Department of Housing and Community Development (VDHCD) in the amount of $2200. The HOME subsidy from the VDHCD is its own separate contract between the Sellers and the VDHCD. This separate contract has its own terms and limits set forth by the VDHCD, and any breach of those terms and limits in this contract would give cause for action by the VDHCD against

the Sellers. Since the VDHCD did not take any action against the Sellers during the Five year life-span of the contract, which expired on the 21st of May, 2010, then we must assume the contact was complete and the terms were satisfied, *functus officio*. The City has no claim to recover satisfied funds from a completed contract from another Government Agency.

6) The Sellers were made aware sometime in the months of August and September of 2013, after a title search had been completed, that there was a Restrictive Covenant currently carried on the deed of the Property. The Sellers agreed that there was a Restrictive Covenant, but it had expired on the 21st of May, 2010 and was no longer in effect. The Sellers were then informed that there was a second Restrictive Covenant (RC2) and it was still in effect.

7) The Sellers then obtained a copy of the RC2 and read it for the first time. It is the Sellers contention, that at no time before the months of August and September of 2013, that the Sellers had any knowledge of the RC2 or of the contents there-within. The Sellers admit that they did in fact sign the RC2 at the closing of the Property on 20th of May, 2005, but the RC2 and its contents were misrepresented, *mala fide*, by the member of the BRHDC present at the closing. Strength of this allegation is given in paragraph 2 of this complaint, that the Property was not the primary residence of the Sellers for some 360 days after the closing of the Property on 20th of May, 2005. The BRHDC knew from the inception of the negotiations for the Property, that the Sellers were unable to make the Property their principal residence until Mark T. Grant was separated from Active Duty from the Armed Services, and therefore hid the RC2, and any other residency restrictions included in the Property, from the Sellers.

8) Now to the validity of the RC2 itself. The RC2 is an illegal instrument and cannot be enforced as written. The RC2 states that the Sellers received no direct assistance from the $101,119.05 in HOME funds administered by the City, which was invested in the Property. The RC2 contract states the BRHDC was the sole recipient of the HOME funds, administered by the City, which went into the development of the Property. I.e., all the HOME funds, from the City, listed in the RC2, were solely development funds to the benefit of the BRHDC, and therefore, nothing can be taken from the Sellers' net proceeds at the transfer or sale of the Property. This action of seizure or recapture by the City, of net proceeds when there is no direct assistance to the home buyer, is illegal under 24 CFR 92.254(a)(5).

9) Did the Sellers receive direct assistance? Yes, a CDBG grant that came from a separate pot of Federal funds, and a HOME subsidy that originated from another government agency with its own terms and conditions. The City cannot apply either or both of the two separate subsidies, *ex post facto*, towards the illegal enforcement of the RC2. The three things are insulated entities, from different distinct pots, and have their own independent unconnected stipulations.

10) The Sellers sought remediation with the City on several different occasions after discovery of the RC2 and before the sale of the Property to no avail. The Sellers notified the City that the contract format of the RC2 was an illegal, unenforceable document according to 24 CFR 92.254(a)(5), and tried to convince the City to replace the RC2 with the City's newer, Federally compliant version of the same contract that the City redrafted somewhere between 2007 and 2009. The City refused. The fact that the City completely restructured its Restrictive Covenants HOME funds contracts *ex nunc*, leads one to believe that the City at some point realized that the previous version of the contract, the RC2, must-have in some way been deficient.

11) Since the Sellers could not gain resolution from the City, and in fact were met with hostility from the City, the Sellers pursued help from HUD's Region 3 - Mid Atlantic Community Planning and Development Field Office Director, Ronnie J. Legette, in Richmond, VA, starting on the 30th of December 2013. Mr. Legette agreed to initiate a review of the situation and said that he would respond with his conclusion upon completion of said review. After numerous communications with Mr. Legette, before, during, and after the sale of the Property, the last of which was on 22nd of January 2014, the sellers are still waiting to hear Mr. Legette's decision.

12) The Plaintiff believes that the Sellers rights granted by the 14th Amendment for Due Process were not provided by the City in this action.

13) WHEREFORE, the plaintiff respectfully request judgments of the court against the defendant awarding to the plaintiff (i) damages of $26,257.30; (ii) pre- and post-judgment interest; (iii) costs for this action; and (iv) any other relief deemed just and equitable by the court.

Dated this 11th of January, 2016

Mark T. Grant, *pro se*

MARK T. GRANT v. THE CITY OF ROANOKE, VA - 3

Case 7:16-cv-00007-GEC   Document 1   Filed 01/11/16   Page 3 of 3   Pageid#: 3