CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

NOV 07 2017

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| MARK T. GRANT, | ) |
| Plaintiff, | ) Civil Action No. 7:16CV00007 |
| v. | ) **MEMORANDUM OPINION** |
| CITY OF ROANOKE, | ) Hon. Glen E. Conrad |
| | ) United States District Judge |
| Defendant. | ) |

Mark T. Grant, proceeding pro se, filed this action against the City of Roanoke, alleging that the City improperly retained $26,257.30 from the sale of certain real property. The City has filed a supplemental motion for summary judgment on the plaintiff's due process claim. For the reasons that follow, the motion will be granted in part and denied in part.

## Background

The facts of this case are outlined in detail in the court's July 18, 2017 memorandum opinion. They are not repeated here except as necessary for resolution of the pending motion. Where appropriate, this summary also includes additional facts cited in the parties' supplemental briefs.

The City participates in the HOME Investment Partnerships Program ("HOME"), a federal grant program created pursuant to the Cranston-Gonzalez National Affordable Housing Act of 1990, as amended, 42 U.S.C. § 12701 et seq. The HOME Program provides funding to states and localities to be used to increase the supply of affordable housing available for low-income households. The program is administered by the United States Department of Housing and Urban Development ("HUD").

In 2002, the City partnered with Blue Ridge Housing Development Corporation ("BRHDC") to develop and rehabilitate housing for sale to purchasers meeting HUD's low-income criteria. As is relevant in the instant case, BRHDC received HOME funds to purchase and rehabilitate property located at 607 Bullitt Avenue in Roanoke, Virginia ("the Property").

The plaintiff and his wife, Lori M. Grant, were found to qualify for the HOME Program. On May 20, 2005, they purchased the Property from BRHDC for the price of $85,000.00, plus additional closing costs totaling $3,969.20. The funds used to purchase the Property were derived from the following sources: (1) an $80,000.00 loan, secured by a first deed of trust on the Property, from a private bank; (2) a $2,200.00 HOME grant, secured by a second deed of trust on the property, from the Virginia Department of Housing and Community Development; (3) a Community Development Block Grant in the amount of $6,400.00; and (4) $100.00 in cash, paid out-of-pocket by the buyers.

Pursuant to the statutory and regulatory provisions governing the HOME Program, the City was required to ensure the affordability of the Property for a period of fifteen years. It was also required to impose resale or recapture provisions on the Property. Because BRHDC received HOME funds to improve the Property and the plaintiff and Ms. Grant did not directly obtain any HOME funds from the City, the City utilized the resale option.

The resale requirements were imposed on the Property pursuant to a Declaration of Restrictive Covenants, dated April 29, 2005, which was signed by the City, BRHDC, the plaintiff, and Ms. Grant. See Declaration of Restrictive Covenants ("Restrictive Covenants"), Docket No. 16-4. The Restrictive Covenants contained terms and conditions that applied against the Property

2

for a period of fifteen years, based on the amount of HOME funds invested in the Property. The Restrictive Covenants provided that, within the fifteen-year affordability period, "any sale or conveyance of the Property shall be only to a family having a gross family income not exceeding 80% of the area median, as established by HUD at the time of the transfer of the Property, and which shall use the Property as its principal residence." Restrictive Covenants 1. As is relevant here, the Restrictive Covenants further provided as follows:

> Any such sale or conveyance of the Property shall allow the owner a fair return on investment. By this is meant that the owner, after satisfying any outstanding loans on the Property (including loans made with HOME funds), may recover the amount of the owner's down payment and closing costs and any capital improvement investment. Thereafter, the City and the homeowner shall share any remaining (net) proceeds from the sale or conveyance. The remaining proceeds shall be divided proportionally as set forth in the following mathematical formulas:
>
> $$\frac{\text{HOME investment}}{\text{HOME investment} + \text{homeowner investment}} \times \text{Net Proceeds} = \text{Amount to City}$$
>
> $$\frac{\text{homeowner investment}}{\text{HOME investment} + \text{homeowner investment}} \times \text{Net Proceeds} = \text{Amount to homeowner}$$

Id.

The plaintiff notified the City in late 2013 that he would be selling the Property, and he inquired about the existence of the Restrictive Covenants. The City informed the plaintiff that the sale would be governed by the terms of the Restrictive Covenants and that the sales proceeds would be shared pursuant to the resale formulas set forth therein.

In January of 2014, the plaintiff and Ms. Grant sold the Property to another individual for the amount of $106,000.00. The sale triggered the resale provisions of the Restrictive Covenants. According to the City, "[t]he sales proceeds were first applied to the outstanding loans against the

3

Property, repayment of the [p]laintiff's initial down payment, believed at the time to be $669.20, and closing costs, leaving remaining net sales proceeds in the amount of $26,430.95." 1st Aff. of Crystal H. Hypes ("1st Hypes Aff.") ¶ 20, Docket No. 16-1 at 4. The manner in which the City applied the resale formulas in the Restrictive Covenants resulted in the City receiving nearly all of the remaining sales proceeds, specifically, $26,257.30, and the plaintiff and Ms. Grant receiving an additional $173.65. Id. ¶ 21.

The plaintiff and Ms. Grant disputed the manner in which the remaining sales proceeds were divided by the City. Although the timing of the conversation is unclear from the record, the plaintiff initially spoke with Crystal Hypes, the City employee responsible for administering HOME funds. According to the City, the plaintiff informed Hypes that the only investments he had made in the Property were the purchase and installation of an outdoor storage shed and new kitchen cabinets.[1] Hypes allegedly advised the plaintiff that such expenditures are not considered "eligible capital expenditures for purposes of . . . the calculation of the formula contained in the Restrictive Covenants." Hypes 2d Aff. ¶ 10, Docket No. 40-1. When the plaintiff "appeared disappointed with that information," Hypes purportedly told him that he could "appeal" to her direct supervisor, Keith Holland.[2] Id. ¶ 11.

At some point thereafter, the plaintiff and Ms. Grant complained to HUD. HUD investigated the complaint and determined that "[t]he city's resale policy for [the Grants']

---

[1] The plaintiff's opposition briefs disputes this assertion and attaches exhibits which support his contention.

[2] The second affidavit signed by Hypes refers to conversations that she allegedly had with Holland and Carmen Bucci, a HUD representative, regarding the types of home expenses that are typically considered in calculating a homeowner's "fair return on investment." Hypes 2d Aff. ¶¶ 11-12. The court agrees with the plaintiff that Hypes' accounts of the other individuals' statements during the conversations are arguably hearsay. In any event, the challenged statements are not probative of the primary issue at hand, namely whether the plaintiff received constitutionally adequate notice and an opportunity to be heard prior to the deprivation of a protected property interest.

4

purchase and subsequent resale of 607 Bullitt Avenue was not in compliance with the HOME regulations in effect in 2005," since the policy "did not define and provide a fair return of the homeowner's initial investment and any capital improvements." July 15, 2014 HUD Letter 2, Docket No. 19-1. HUD emphasized that "[w]hile fair return on investment is defined by the participating jurisdiction, the HOME regulations require that the City ensure that the definition is both clear and objective, so the original HOME-assisted homebuyer understands how his or her investment and any return on that investment would be determined at the time of resale." June 9, 2015 HUD Letter 1-2, Docket No. 42-5. HUD also noted that although the resale price of the Property was significantly above the original purchase price, "the City recaptured equity the Grants earned by making monthly payments on their first mortgage." Id. HUD ultimately concluded that the "effect" of the City's actions was that "the Grant[s] did not receive a fair return on their investment pursuant to a regulatory compliant resale policy[.]" July 15, 2014 HUD Letter 3. HUD required the City to either return $68,530.00 in HOME funds or settle with the Grants for an amount to be approved by HUD. The City chose the former course and transferred $65,530.00 from the City's general fund to its HOME Investment Trust Fund.

On January 11, 2016, the plaintiff filed the instant action against the City, seeking to recover the funds retained by the City from the sale of the Property. In his original complaint, the plaintiff asserted that the City's actions violated the federal regulations governing the HOME Program and his right to due process under the Fourteenth Amendment. See Compl. ¶¶ 10, 12, Docket No. 1.

On November 4, 2016, the City moved for summary judgment. The City argued that its HOME resale policy complied with the HOME regulations in existence at the time the plaintiff and

Ms. Grant purchased the property. The City did not specifically address the plaintiff's due process claim.

On July 18, 2017, following a hearing on the motion for summary judgment, the motion was granted in part and denied in part. The court concluded that the plaintiff did not have a viable claim for damages under the HOME statute itself, or 42 U.S.C. § 1983, for alleged violations of the statute and its implementing regulations. Accordingly, to the extent the City moved for summary judgment on such claims, the motion was granted. However, the plaintiff also claimed that he was denied due process as required by the Fourteenth Amendment. Because the City did not specifically address that claim in its motion for summary judgment, the court declined to consider the arguments made by the City for the first time during oral argument. Instead, the court permitted the City to file a supplemental motion for summary judgment on the due process claim.

On August 8, 2017, the City filed a supplemental motion for summary judgment, along with a second affidavit from Crystal Hypes. In the second affidavit, Hypes maintains that "[l]ocalities have the flexibility to determine what types of capital improvements [they] will include in the basis for calculating an owner's fair return on [his] investment." Hypes 2d Aff. ¶ 5. Hypes indicates and that "it is the City's policy that only expenditures for improvements that increase the fair market value of HUD HOME assisted real estate are considered capital expenditures that may be included in the basis for calculating an owner's fair return on [his] investment, if any real estate purchased or improved with the HUD HOME assistance funds is sold prior to the expiration of the Affordability Period." Id. ¶ 6. Hypes also indicates that it is "the City's position" that mortgage payments made by a homeowner "are not considered as investments in calculating his fair return on investment." Id. ¶ 13. According to Hypes, the City

6

believes that "such an approach ignores market realities, and would improperly shift the burden of any loss of equity by the owner onto the City." Id.

The plaintiff has filed a brief in opposition to the supplemental motion for summary judgment, along with additional exhibits. The motion is now ripe for review.

## Standard of Review

An award of summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if a reasonable finder of fact could return a verdict for the nonmoving party. Libertarian Party of Va. v. Judd, 718 F.3d 308, 313 (4th Cir. 2013). "A fact is material if it might affect the outcome of the suit under the governing law." Id. (internal citations and quotation marks omitted). In deciding whether to grant a summary judgment motion, the court must view the record in the light most favorable to the nonmoving party and draw all reasonable inferences in his favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). The court "cannot weigh the evidence or make credibility determinations." Jacobs v. N.C. Admin. Office of the Courts, 780 F.3d 562, 568 (4th Cir. 2015).

## Discussion

The Fourteenth Amendment to the United States Constitution protects citizens from being deprived of property without due process. U.S. Const. amend. XIV, § 1. Due process contains both procedural and substantive components. Snider Int'l Corp. v. Town of Forest Heights, 739 F.3d 140, 145 (4th Cir. 2014). "Procedural due process prevents mistaken or unjust deprivation, while substantive due process prohibits certain actions regardless of procedural fairness." Id. (citations omitted). The City has construed the plaintiff's complaint as asserting violations of

both procedural and substantive due process. Accordingly, the court will examine each component in turn.

 I. **Procedural Due Process**

To establish a violation of procedural due process, the plaintiff "must show that (1) [he] had property or a property interest (2) of which the defendant deprived [him] (3) without due process of law." Sunrise Corp. v. City of Myrtle Beach, 420 F.3d 322, 328 (4th Cir. 2005) (citing Sylvia Dev. Corp. v. Calvert Cnty., 48 F.3d 810, 826 (4th Cir. 1995)). In moving for summary judgment, the City acknowledges that the plaintiff had a constitutionally protected interest in the Property entitling him to due process. See Def.'s 2d Supp'l Br. 6, Docket No. 40 ("[I]t is undisputed that Plaintiff had an interest in the Property, and that the City retained a portion of the sales proceeds from the sale of the Property[.]"). The City instead argues that it is clear from the record that the plaintiff received all of the process he was due.[3] For the following reasons, however, the court is unable to agree.

"At bottom, procedural due process requires fair notice of impending state action and an opportunity to be heard." Snider Int'l Corp., 739 F.3d at 146 (citing Mathews v. Eldridge, 424 U.S. 319, 333 (1976); Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314-15 (1950)); see also United States v. James Daniel Good Real Prop., 510 U.S. 43, 48 (1993) ("Our precedents establish the general rule that individuals must receive notice and an opportunity to be heard before the Government deprives them of property."). The notice and hearing requirements are "distinct features of due process, and are thus governed by different standards." Id. (citation omitted). Proper notice, in particular, is an "'elementary and fundamental requirement of due process,' and must be reasonably calculated to convey information concerning a deprivation." Id. (quoting

---

[3] The City does not otherwise challenge whether the plaintiff is able to satisfy the requirements for municipal liability under 42 U.S.C. § 1983.

Mullane, 339 U.S. at 314). More specifically, "[d]ue process requires notice 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" United Student Aid Funds, Inc. v. Espinosa, 559 U.S. 260, 272 (2010) (quoting Mullane, 339 U.S. at 314). "Adequate notice is integral to the due process right to a fair hearing, for the 'right to be heard has little reality or worth unless one is informed.'" Bliek v. Palmer, 102 F.3d 1472, 1475 (8th Cir. 1997) (quoting Mullane, 339 U.S. at 314); see also Cosby v. Ward, 843 F.2d 967 (7th Cir. 1988) ("It is universally agreed that adequate notice lies at the heart of due process. Unless a person is adequately informed of the reasons for denial of a legal interest, a hearing serves no purpose . . . .") (internal citation and quotation marks omitted).

Applying these principles, the court concludes that the City is not entitled to summary judgment on the plaintiff's procedural due process claim. The evidence in the record, when viewed in the plaintiff's favor, raises genuine issues of material fact as to whether the plaintiff was deprived of an interest in the Property without adequate notice and a meaningful opportunity to be heard.

For its part, the City seems to suggest that the Restrictive Covenants signed by the plaintiff provided adequate notice of how the sales proceeds would be disbursed if he sold the Property prior to the expiration of the affordability period. See Def.'s 2d Supp'l Br. 6 (emphasizing that "the portion of the sales proceeds from Plaintiff's sale of the Property retained by the City was in accordance with the terms of the Resale Formula contained in the Restrictive Covenants"). The problem with this argument is that the Restrictive Covenants did not reference or explain either of the resale policies described in Hypes' second affidavit. For instance, Hypes indicates that it is the City's policy to only consider certain types of capital improvements made by a homeowner in

9

calculating a fair return on the homeowner's investment, namely those that the City determines add value to property. However, this policy was not expressly stated in the Restrictive Covenants. The Restrictive Covenants did not limit or delineate the types of improvements that would be considered eligible capital improvements, or explain how capital improvements would be valued by the City. Instead, the Restrictive Covenants indicated that the owner "may recover . . . any capital improvement investment." Restrictive Covenants 1 (emphasis added). Accordingly, a reasonable factfinder could conclude that the Restrictive Covenants did not provide adequate notice of the City's policy on capital improvements.

Along the same lines, a reasonable factfinder could conclude that the Restrictive Covenants did not provide adequate notice of the effect that the resale provisions would have on the plaintiff's ability to build equity in the Property by making monthly mortgage payments. Hypes' second affidavit indicates that the City takes the position that mortgage payments toward the principal balance on a loan are not considered part of the "homeowner investment," for purposes of the resale formula set forth in the Restrictive Covenants. Once again, however, this particular policy was not mentioned in the Restrictive Covenants, and there is no evidence that it was relayed to the plaintiff at any other time. Consequently, a reasonable factfinder could conclude that the plaintiff was not provided sufficient notice of the potential deprivation of an equity interest in the Property.

To the extent the City alternatively argues that the plaintiff's verbal communications with Hypes provided sufficient notice to satisfy due process, the court is unable to agree. Viewing the record in the light most favorable to the plaintiff, a reasonable factfinder could conclude that their conversation did not provide adequate notice of the City's resale policies or the effect that such policies would have on the plaintiff's interest in the Property. Additionally, while Hypes

purportedly told the plaintiff that he could "appeal" to her direct supervisor, the record is devoid of any evidence regarding the nature or extent of the City's appeal process. Accordingly, the court is unable to determine whether the plaintiff was adequately informed of the procedures available for protesting the actions at issue, or whether such procedures were sufficient to protect the plaintiff's procedural due process rights.

In sum, genuine issues of material fact remain as to whether the plaintiff received adequate notice and a meaningful opportunity to be heard. Accordingly, the City is not entitled to summary judgment on the procedural due process claim.

## II. Substantive Due Process

The City also construed the plaintiff's complaint as asserting a substantive due process claim. The government violates substantive due process only when its actions shock the conscience. Cty. of Sacramento v. Lewis, 523 U.S. 833, 846-47 (1998); Young v. City of Mount Ranier, 238 F.3d 567, 574 (4th Cir. 2001). The United States Court of Appeals for the Fourth Circuit has emphasized that the protections of substantive due process extend only to "state action so arbitrary and irrational, so unjustified by any circumstance or governmental interest, as to be literally incapable of avoidance by any pre-deprivation procedural protections or of adequate rectification by any post-deprivation state remedies." Rucker v. Hartford Cty., 946 F.2d 278, 281 (4th Cir. 1991) (citing Daniels v. Williams, 474 U.S. 327, 331 (1986)). To shock the conscience, the government's conduct "must be 'intended to injure in some way unjustifiable by any government interest.'" Hawkins v. Freeman, 195 F.3d 732, 742 (4th Cir. 1999) (quoting Lewis, 523 U.S. at 849) (emphasis omitted).

To the extent the plaintiff's complaint could be construed to assert a violation of his substantive due process rights, the court concludes that the City is entitled to summary judgment.

11

In short, the record does not contain any evidence from which a reasonable factfinder could conclude that the City engaged in conscience-shocking conduct. The manner in which the City retained the proceeds from the sale of the Property was simply not so egregious and unjust that no amount of fair procedure could rectify it. Accordingly, the City's motion for summary judgment on any alleged violation of substantive due process will be granted.

## Conclusion

For the reasons stated, the supplemental motion for summary judgment filed by the City will be granted in part and denied in part. The Clerk is directed to send copies of this memorandum opinion and the accompanying order to the plaintiff and all counsel of record.

DATED: This 7th day of November, 2017.

_/s/ Jau Conrad_
United States District Judge